JUDGE CROTTY

07 CV 3230

**THE ROSEN LAW FIRM, P.A.**
Phillip Kim, Esq. (PK 9384)
Laurence M. Rosen, Esq. (LR 5733)
350 Fifth Avenue, Suite 5508
New York, New York 10118
Telephone: (212) 686-1060
Fax: (212) 202-3827

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

APR 23 2007

U.S.D.C. S.D. N.Y.
CASHIERS

| | |
|---|---|
| GANG KOU, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED, ) ) ) ) | **CIVIL ACTION NO.** |
| Plaintiff, ) ) ) | |
| vs. ) | CLASS ACTION COMPLAINT |
| MEDIS TECHNOLOGIES LTD., ROBERT K. LIFTON, and ANDREW UDIS, ) ) ) ) | **JURY TRIAL DEMANDED** |
| Defendants. ) ) ) ) ) | |

Plaintiff, Gang Kou individually and on behalf of all other persons similarly situated, by his

undersigned attorneys, for his complaint against defendants, alleges the following based upon

personal knowledge as to himself and his own acts, and information and belief as to all other matters,

based upon, *inter alia*, the investigation conducted by and through her attorneys, which included,

among other things, a review of the defendants' public documents, and announcements made by

defendants, United States Securities and Exchange Commission ("SEC") filings, wire and press

releases published by and regarding Medis Technologies Ltd. ("Medis", or the "Company"), and

advisories about the Company, and information readily obtainable on the Internet. Plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1.     This is a federal securities class action on behalf of a class consisting of all persons other than defendants who purchased the common stock, the call options of Medis, or who sold put options of Medis, between April 13, 2007 and April 17, 2007, inclusive, seeking to recover damages caused by Defendants' violations of federal securities laws and pursue remedies under the Securities Exchange Act of 1934 (the "Exchange Act").

## JURISDICTION AND VENUE

2.     The claims asserted herein arise under and pursuant to Sections 10(b) and 20(a) of the Exchange Act, (15 U.S.C. §78j(b) and 78t(a)), and Rule 10b-5 promulgated thereunder (17 C.F.R. §240.10b-5).

3.     This Court has jurisdiction over the subject matter of this action pursuant to §27 of the Exchange Act (15 U.S.C. §78aa) and 28 U.S.C. § 1331.

4.     Venue is proper in this Judicial District pursuant to §27 of the Exchange Act, 15 U.S.C. § 78aa and 28 U.S.C. § 1391(b). Defendant maintains its principal executive offices in this District and many of the acts and transactions alleged herein, including the preparation and dissemination of statement containing materially false and misleading information and omissions of material fact, occurred in substantial part in this District.

5.     In connection with the acts, conduct and other wrongs alleged in this complaint, defendants, directly or indirectly, used the means and instrumentalities of interstate commerce,

including but not limited to, the United States mails, interstate telephone communications and the facilities of the national securities exchange.

## PARTIES

6.      Plaintiff Gang Kou, as set forth in the accompanying certification, incorporated by reference herein, purchased Medis securities and/or sold put options of Medis at artificially inflated prices during the Class Period and has been damaged thereby.

7.      Defendant Medis is a Delaware Corporation, with its principal executive offices located at 805 Third Avenue, New York, New York 10022. Medis is engaged in the design, development, and marketing of liquid fuel cell products for mobile handset and portable consumer electronics markets, as well as the development and commercialization of an instrument for measuring reactions of living cells while the cells are in a static state. The Company's common stock trades on the NASDAQ Global Market under the ticker "MDTL".

8.      Defendant Robert K. Lifton ("Lifton"), at all relevant times herein, served as the Chairman and Chief Executive Officer ("CEO") of the Company.

9.      Defendant Andrew Udis ("Udis"), at all relevant times herein, served as the business development manager of the Company.

10.      Lifton and Udis are collectively referred to hereinafter as the "Individual Defendants."

11.      During the Class Period, each of the Individual Defendants, as senior executive officers, agents, and/or directors of Medis and its subsidiaries and affiliates, of the Company, were privy to non-public information concerning its business, finances, products, markets and present and future business prospects via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at management and Board of Directors

3

meetings and committees thereof and via reports and other information provided to them in connection therewith. Because of their possession of such information, the Individual Defendants knew or recklessly disregarded the fact that adverse facts specified herein had not been disclosed to, and were being concealed from, the investing public.

12.    Because of the Individual Defendants' positions with the Company, they had access to the adverse undisclosed information about the Company's business, operations, operational trends, financial statements, markets and present and future business prospects via access to internal corporate documents (including the Company's operating plans, budgets and forecasts and reports of actual operations compared thereto), conversations and connections with other corporate officers and employees, attendance at management and Board of Directors meetings and committees thereof and via reports and other information provided to them in connection therewith.

13.    It is appropriate to treat the Individual Defendants as a group for pleading purposes and to presume that the false, misleading and incomplete information conveyed in the Company's public filings, press releases and other publications as alleged herein are the collective actions of the narrowly defined group of defendants identified above. Each of the above officers and directors of Medis and its subsidiaries and affiliates, by virtue of their positions with the Company, directly participated in the management of the Company, was directly involved in the day-to-day operations of the Company at the highest levels and was privy to confidential proprietary information concerning the Company and its business, operations, growth, financial statements, and financial condition, as alleged herein. Said defendants were involved in drafting, producing, reviewing and/or disseminating the false and misleading statements and information alleged herein, were aware, or

4

recklessly disregarded, that the false and misleading statements were being issued regarding the Company, and approved or ratified these statements, in violation of the federal securities laws.

14.     As officers, directors and controlling persons of a publicly-held company whose securities were and are registered with the SEC pursuant to the Exchange Act, and were traded on the NASDAQ Global Market and governed by the provisions of the federal securities laws, the Individual Defendants each had a duty to disseminate accurate and truthful information promptly with respect to the Company's financial condition and performance, growth, operations, financial statements, business, markets, management, earnings and present and future business prospects, and to correct any previously-issued statements that had become materially misleading or untrue, so that the market price of the Company's publicly-traded securities would be based upon truthful and accurate information. The Individual Defendants' misrepresentations and omissions during the Class Period violated these specific requirements and obligations.

15.     The Individual Defendants participated in the drafting, preparation, and/or approval of the various public and shareholder and investor reports and other communications complained of herein and were aware of, or recklessly disregarded, the misstatements contained therein and omissions therefrom, and were aware of their materially false and misleading nature. Because of their Board membership and/or executive and managerial positions with Medis, each of the Individual Defendants had access to the adverse undisclosed information about Medis' financial condition and performance as particularized herein and knew (or recklessly disregarded) that these adverse facts rendered the positive representations made by or about Medis and its business issued or adopted by the Company materially false and misleading.

5

16.     The Individual Defendants, because of their positions of control and authority as officers, directors, agents, and/or controlling persons of the Company, were able to and did control the content of the various SEC filings, press releases and other public statements pertaining to the Company during the Class Period.  Each Individual Defendant was provided with copies of the documents alleged herein to be misleading prior to or shortly after their issuance and/or had the ability and/or opportunity to prevent their issuance or cause them to be corrected.  Accordingly, each of the Individual Defendants is responsible for the accuracy of the public reports and press releases detailed herein, and is therefore primarily liable for the representations contained therein.

17.     Each of the defendants is liable as a participant in a fraudulent scheme and course of business that operated as a fraud or deceit on purchasers of Medis securities by disseminating materially false and misleading statements and/or concealing material adverse facts.  The scheme (i) deceived the investing public regarding Medis' business, prospects, operations, management and the intrinsic value of Medis securities; and (ii) caused Plaintiff and other members of the Class to purchase Medis securities at artificially inflated prices.

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

18.     Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all persons who purchased the common stock of Medis during the Class Period and who were damaged thereby.  Excluded from the Class are defendants, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which defendants have or had a controlling interest.

19.    The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, Medis' securities were actively traded on the NASDAQ Global Market. While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, Plaintiff believes that there are at least hundreds of members in the proposed Class. According to the Company's Annual Report filed with the SEC on March 15, 2007, the Company had 34,939,364 shares outstanding as of March 12, 2007. Members of the Class may be identified from records maintained by Medis or its transfer agent and may be notified of the pendency of this action by mail, using a form of notice customarily used in securities class actions.

20.    Plaintiff's claims are typical of the claims of the members of the Class, as all members of the Class are similarly affected by defendants' wrongful conduct in violation of federal law that is complained of herein.

21.    Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.

22.    Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

(a)  whether the federal securities laws were violated by defendants' acts as alleged herein;

(b)  whether statements made by defendants to the investing public during the Class Period misrepresented material facts about the business, prospects, operations and management of Medis; and

7

(c) to what extent the members of the Class have sustained damages and the proper measure of damages.

23.    A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

## SUBSTANTIVE ALLEGATIONS

24.    The Class Period begins on Friday, April 13, 2007 when the Company issued a materially false and misleading press release touting a purported "commercial sales" agreement it had entered into with Microsoft for the Company's 24/7 fuel cell Power Packs. The press release states in relevant part:

**Medis Technologies Begins Commercial Sales of Its Fuel Cell 24/7 Power Pack**
Friday April 13, 10:02 am ET

NEW YORK--(BUSINESS WIRE)--MEDIS TECHNOLOGIES LTD. (NASDAQ:MDTL - News) announced that it has begun commercial sales of its 24/7 fuel cell Power Packs to Microsoft. The first shipment of Microsoft branded 24/7 Power Packs were made today.

25.    This announcement was significant and material to the Company as it marked the Company's first "commercial sales" and as described by Company CEO Lifton, this moment was "historic." The announcement also gave the false and misleading impression the Company was ramping up for production to fill this order to Microsoft. The April 13, 2007 press release states in relevant part:

8

These first Power Packs were produced on Medis' semi-automated line. Our fully automated line which was built by Ismeca, in Switzerland, is in the process of being dismantled and shipped to Ireland where it will be managed by Celestica. A video showing operation of the line is available on or web site at www.medistechnologies.com.

Medis Technologies' primary focus is on direct liquid fuel cell technology. Its business strategy is to sell its products to end users through retail outlets, service providers and to the military and other markets. Medis has also developed the CellScan with many potential applications relating to disease diagnostics and chemo sensitivity. Additionally, Medis' product pipeline includes other technologies, in varying stages of development.

"This is an historic moment for our company," said Robert K. Lifton, Chairman and CEO of Medis Technologies. "It marks the first commercial sales of our 24/7 Power Pack product and indeed, the first commercial sales in quantities of any consumer fuel cell product. We are pleased to be able to serve Microsoft as our first customer."

26.     This announcement caused the Company's stock to rise from a previous closing price of $18.29 a share on April 12, 2007 to a closing price of $20.32 a share on April 13, 2007.  The Company's stock even reached an intraday high of $24.10 and over 3.4 million shares traded hands that day, as compared to the 175,000 shares that traded the day before.

27.     Based on this announcement certain market commentators had contacted the Company for more information.  For example, Herb Greenberg of *Marketwatch* noted that the press release did not provide any details "about the size of the sale, potential contribution to profits or even what Microsoft might use might use this fuel-cell product for."  In any event, Greenberg noted he had a "call into Microsoft" for "confirmation".  According to Greenberg, the Microsoft spokeswoman would attempt to track it down.

28.     On April 13, 3007 *Inside Greentech* published a news article in which defendant Udis, the Company's business manager, is quoted as stating the deal with Microsoft was expected to be "in the millions" of units.  Udis also added that Microsoft "branded the product and plan to sell these around the world" and to the "public".  The announcement states in relevant part:

9

April 13, 2007 - Exclusive
By Dallas Kachan, **inside greentech**

Microsoft is to soon start offering a fuel cell-based power pack product for powering personal electronics, its OEM partner revealed today.

Medis Technologies of New York (NASDAQ: MDTL) said it has delivered its first shipment of special Microsoft-branded versions of its Direct Liquid Fuel Cell (DLFC)-based "24/7 Power Pack" product.

While the company wouldn't specify the quantity of the initial shipment, or of the contract's total volume, business development manager Andrew Udis told Inside Greentech the ultimate unit commitment was expected to be "in the millions."

A Microsoft spokesperson would only acknowledge that the company made "a small purchase" from Medis, but Udis confirmed Microsoft intends to offer the devices to the public.

"They've branded the product and plan to sell these around the world."

Shares of Medis were up $2.60 today, almost 15%, trading at $20.99.

This is an historic moment for our company," said Robert K. Lifton, Chairman and CEO of Medis, in a statement.

"It marks the first commercial sales of our 24/7 Power Pack product and indeed, the first commercial sales in quantities of any consumer fuel cell product. We are pleased to be able to serve Microsoft as our first customer."

The Microsoft deal may be the first, but Medis' Udis told Inside Greentech other companies have come forward with volume orders for its 24/7 Power Pack.

*       *       *

A fully automated line, which was built by Ismeca in Switzerland, is in the process of being dismantled and shipped to Ireland where it's to be managed by contract manufacturer Celestica.

29.     Throughout the weekend, many numerous media outlets and publications issued announcements reiterating the same information that Medis had indeed entered into an agreement to enable Microsoft to sell Medis' product under Microsoft's own name to consumers. Likewise there

were certain critics who doubted the significance of the deal. The Company did not address any of these doubts or provided any other elaboration of the Microsoft deal.

### TRUTH BEGINS TO EMERGE

30.     On April 16, 2007 through April 17, 2007 information questioning the veracity of the Company's April 13, 2007 announcements entered the market. The Company remained silent, despite the fact it had a clear duty to disclose additional information to correct its prior statements it knew were materially false and misleading. The Company's silence, however, was taken by the market as an indication that the previously published reports by the market commentators casting doubt on the Company's statements may actually be true. Indeed, the Company's silence caused the Company's stock to decline $.82 over the course of April 16 and 17, 2007.

31.     On April 17, 2007 after-market close, a *Marketwatch* columnist issued an article that revealed that Microsoft had no plans to sell fuel cell products capable of re-charging portable products, that Microsoft was only purchasing a "small amount" of Medis' products, that Microsoft was "not planning to sell them to consumers" but rather the products were to be distributed for free at an upcoming event, according to a Microsoft spokeswoman.

32.     Thereafter on April 17, 2007, Greenberg of *Marketwatch* reported that the following:

… The skimpy Medis press release last Friday, about the Microsoft deal, gave no detail, but helped goose the stock. In subsequent interviews, Medis executives pumped up the importance of the deal. Business development manager Andrew Udis went so far as to tell the publication, Inside Greentech, that the Microsoft commitment was expected to be "in the millions" and that Microsoft intends to offer its fuel cell to the public. "They've branded these products and plan to sell these around the world," Udis was quoted as saying.

Now hear this: A Microsoft spokesman, noting that the order was "small," told me there has been "inaccurate" information in the marketplace about what Microsoft plans to do

11

with the fuel cells. **"We have no plans to resell these products around the world,"** she **said. She added that Microsoft has no plans "for development of the product."**

Then what is Microsoft doing with it? As John says in his piece, Microsoft plans to use the Medis products as a giveaway at an upcoming event...like a chatchke. Yet another Medis announcement that isn't quite what it appears to be.

**Update -- this just in: Glass Lewis, the proxy and research firm, reports added color in a report to its clients. It quoted a Microsoft spokesman as saying the Medis product is "not a Microsoft branded product." He added that the total purchase price was "less than $15,000. We have no agreements with them. No joint development. There's no partnership around accessories. If you think of this as akin to Microsoft buying a pen or a Frisbee -- that's the way you should think of it." That's pretty much confirms what I got in a "background" conversation with Microsoft.**

*(emphasis in original)*

33.    The market reacted to this adverse announcement. On April 18, 2007 the Company stock, closed down at $1.53 at $17.97 on heavy trading volume. No response whatsoever was issued by the Company to set the record straight, if it could at all.

34.    From April 19, 2007 and April 20, 2007 the Company stock fell an additional $0.55 per share, which was caused by the Company's continued silence about the Microsoft deal despite having a duty to correct its own material misrepresentations concerning the same. The Company's malevolence added further intensity and credibility to the Greenberg announcements above, and other doubts issued by market commentators.

35.    As a result of these adverse disclosures, Plaintiff and the Class were damaged.

### Applicability Of Presumption Of Reliance:
### Fraud-On-The-Market Doctrine

36.    At all relevant times, the market for Medis' common stock was an efficient market for the following reasons, among others.

(a)     Medis' stock met the requirements for listing, and was listed and actively traded on the NASDAQ Global Market, a highly efficient and automated market;

(b)     During and around the class period, on average, nearly five hundred thousand shares of Medis stock were traded on a daily basis, demonstrating a very active and broad market for Medis stock and permitting a *very strong* presumption of an efficient market;

(c)     As a regulated issuer, Medis filed periodic public reports with the SEC and the NASDAQ;

(d)     Medis regularly communicated with public investors via established market communication mechanisms, including through regular disseminations of press releases on the national circuits of major newswire services and through other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services;

(e)     Medis was followed by several securities analysts employed by major brokerage firms who wrote reports which were distributed to the sales force and certain customers of their respective brokerage firms. Each of these reports was publicly available and entered the public marketplace;

(f)     Numerous NASD member firms were active market-makers in Medis stock at all times during the Class Period; and

(g)     Unexpected material news about Medis was reflected and incorporated into the Company's stock price during the Class Period.

37.     As a result of the foregoing, the market for Medis' common stock promptly digested current information regarding Medis from all publicly available sources and reflected such information in Medis' stock price.  Under these circumstances, all purchasers of Medis' common

13

stock during the Class Period suffered similar injury through their purchase of Medis' common stock at artificially inflated prices and a presumption of reliance applies.

## NO SAFE HARBOR

38.     The statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the allegedly false statements pleaded in this complaint. Many of the specific statements pleaded herein were not identified as "forward-looking statements" when made.  To the extent there were any forward-looking statements, there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements.  Alternatively, to the extent that the statutory safe harbor does apply to any forward-looking statements pleaded herein, defendants are liable for those false forward-looking statements because at the time each of those forward-looking statements was made, the particular speaker knew that the particular forward-looking statement was false, and/or the forward-looking statement was authorized and/or approved by an executive officer of Medis who knew that those statements were false when made.

### FIRST CLAIM
### Violation Of Section 10(b) Of
### The Exchange Act Against And Rule 10b-5
### Promulgated Thereunder Against All Defendants

39.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

40.     During the Class Period, defendants carried out a plan, scheme and course of conduct which was intended to and, throughout the Class Period, did: (1) deceive the investing public, including plaintiff and other Class members, as alleged herein; and (2) cause plaintiff and other

members of the Class to purchase Medis' common stock at artificially inflated prices. In furtherance of this unlawful scheme, plan and course of conduct, defendants, and each of them, took the actions set forth herein.

41.     Defendants (a) employed devices, schemes, and artifices to defraud; (b) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (c) engaged in acts, practices, and a course of business which operated as a fraud and deceit upon the purchasers of the Company's common stock in an effort to maintain artificially high market prices for Medis' common stock in violation of Section 10(b) of the Exchange Act and Rule 10b-5. All defendants are sued either as primary participants in the wrongful and illegal conduct charged herein or as controlling persons as alleged below.

42.     Defendants, individually and in concert, directly and indirectly, by the use, means or instrumentalities of interstate commerce and/or of the mails, engaged and participated in a continuous course of conduct to conceal adverse material information about the business, operations and future prospects of Medis as specified herein.

43.     These defendants employed devices, schemes and artifices to defraud, while in possession of material adverse non-public information and engaged in acts, practices, and a course of conduct as alleged herein in an effort to assure investors of Medis' value and performance and continued substantial growth, which included the making of, or the participation in the making of, untrue statements of material facts and omitting to state material facts necessary in order to make the statements made about Medis and its business operations and future prospects in the light of the circumstances under which they were made, not misleading, as set forth more particularly herein, and

engaged in transactions, practices and a course of business which operated as a fraud and deceit upon the purchasers of Medis' common stock during the Class Period.

44.     Each of the Individual Defendants' primary liability, and controlling person liability, arises from the following facts: (1) the Individual Defendants were high-level executives, directors, and/or agents at the Company during the Class Period and members of the Company's management team or had control thereof; (2) each of these defendants, by virtue of his responsibilities and activities as a senior officer and/or director of the Company was privy to and participated in the creation, development and reporting of the Company's financial condition; (3) each of these defendants enjoyed significant personal contact and familiarity with the other defendants and was advised of and had access to other members of the Company's management team, internal reports and other data and information about the Company's finances, operations, and sales at all relevant times; and (4) each of these defendants was aware of the Company's dissemination of information to the investing public which they knew or recklessly disregarded was materially false and misleading.

45.     The defendants had actual knowledge of the misrepresentations and omissions of material facts set forth herein, or acted with reckless disregard for the truth in that they failed to ascertain and to disclose such facts, even though such facts were available to them. Such defendants' material misrepresentations and/or omissions were done knowingly or recklessly and for the purpose and effect of concealing Medis' operating condition and future business prospects from the investing public and supporting the artificially inflated price of its common stock. As demonstrated by defendants' overstatements and misstatements of the Company's financial condition and business prospects throughout the Class Period, defendants, if they did not have actual knowledge of the misrepresentations and omissions alleged, were reckless in failing to obtain such knowledge by

deliberately refraining from taking those steps necessary to discover whether those statements were false or misleading.

46.    As a result of the dissemination of the materially false and misleading information and failure to disclose material facts, as set forth above, the market price of Medis' common stock was artificially inflated during the Class Period.  In ignorance of the fact that market prices of Medis' publicly-traded common stock were artificially inflated, and relying directly or indirectly on the false and misleading statements made by defendants, or upon the integrity of the market in which the common stock trades, and/or on the absence of material adverse information that was known to or recklessly disregarded by defendants but not disclosed in public statements by defendants during the Class Period, plaintiff and the other members of the Class acquired Medis common stock during the Class Period at artificially high prices and were or will be damaged thereby.

47.    At the time of said misrepresentations and omissions, plaintiff and other members of the Class were ignorant of their falsity, and believed them to be true.  Had plaintiff and the other members of the Class and the marketplace known the truth regarding Medis' financial results, which were not disclosed by defendants, plaintiff and other members of the Class would not have purchased or otherwise acquired their Medis common stock, or, if they had acquired such common stock during the Class Period, they would not have done so at the artificially inflated prices which they paid.

48.    By virtue of the foregoing, defendants have violated Section 10(b) of the Exchange Act, and Rule 10b-5 promulgated thereunder.

49.    As a direct and proximate result of defendants' wrongful conduct, plaintiff and the other members of the Class suffered damages in connection with their respective purchases and sales of the Company's common stock during the Class Period.

50.    This action was filed within two years of discovery of the fraud and within five years of each plaintiff's purchases of securities giving rise to the cause of action.

## SECOND CLAIM

### Violation Of Section 20(a) Of
### The Exchange Act Against the Individual Defendants

51.    Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

52.    The Individual Defendants acted as controlling persons of Medis within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their high-level positions, agency, and their ownership and contractual rights, participation in and/or awareness of the Company's operations and/or intimate knowledge of the false financial statements filed by the Company with the SEC and disseminated to the investing public, the Individual Defendants had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which plaintiff contends are false and misleading.  The Individual Defendants were provided with or had unlimited access to copies of the Company's reports, press releases, public filings and other statements alleged by plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

53.    In particular, each of these defendants had direct and supervisory involvement in the day-to-day operations of the Company and, therefore, is presumed to have had the power to control

or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.

54.    As set forth above, Medis and the Individual Defendants each violated Section 10(b) and Rule 10b-5 by their acts and omissions as alleged in this Complaint.

55.    By virtue of their positions as controlling persons, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act as they culpably participated in the fraud alleged herein. As a direct and proximate result of defendants' wrongful conduct, plaintiff and other members of the Class suffered damages in connection with their purchases of the Company's common stock during the Class Period.

56.    This action was filed within two years of discovery of the fraud and within five years of each plaintiff's purchases of securities giving rise to the cause of action.

**WHEREFORE**, plaintiff prays for relief and judgment, as follows:

(a) Determining that this action is a proper class action, designating plaintiff as Lead Plaintiff and certifying plaintiff as a class representative under Rule 23 of the Federal Rules of Civil Procedure and plaintiff's counsel as Lead Counsel;

(b) Awarding compensatory damages in favor of plaintiff and the other Class members against all defendants, jointly and severally, for all damages sustained as a result of defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

(c) Awarding plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

(d) Such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

Dated: April 23, 2007                          Respectfully submitted,

                                               **THE ROSEN LAW FIRM, P.A.**

                                               _____
                                               Phillip Kim, Esq. (PK 93843)
                                               Laurence Rosen, Esq. (LR 5733)
                                               350 Fifth Avenue, Suite 5508
                                               New York, NY 10118
                                               Phone: (212) 686-1060
                                               Fax: (212) 202-3827

                                               Counsel for Plaintiff

**From:** info@rosenlegal.com [mailto:info@rosenlegal.com]
**Sent:** Sunday, April 22, 2007 10:37 PM
**To:** Rosen Law Firm - Info
**Subject:** Confirmation of Receipt of On-Line Signup

Dear Gang Kou,

We have received your certification, confirming your participation in the Medis Technologies Ltd. class action litigation. Thank you for joining with us, below is a copy of your certification, and the retention agreement. Please retain these for your records. If you have any questions, please feel free to contact us at 1-866-rosenlegal (866-767-3653) or via e-mail at info@rosenlegal.com.

Sincerely,

The Rosen Law Firm P.A.

--------

Signup Form

Certification of Named Plaintiff Pursuant to Federal Securities Laws

First name: Gang
Last name: Kou
Address:
City:
State, Zip:
Email:
Phone:

Plaintiff certifies that:

1. I have reviewed the Complaint and authorized its filing.

2. I did not purchase the security that is the subject of this action, at the direction of plaintiff's counsel or in order to participate in any private action arising under this title.

3. I am willing to serve as a representative party on behalf of a class and will testify at deposition and trial, if necessary.

4. My transactions in the securities, which are the subject of this action, during the Class Period set forth in the Complaint are as follows:

Share Purchases:

Purchase Date(s): 04/13/2007  Number of shares: 1000  Price per Share: 20.82

Share Sales:

5. I have not served as a representative party on behalf of a class under the federal security laws during the last three years, except if detailed below.

6. I will not accept any payment for serving as a representative party, except to receive my prorata share of any recovery, or as ordered or approved by the court including the award to a representative plaintiff of reasonable costs and expenses (including lost wages) directly relating to the representation of the class

I declare under penalty of perjury that the foregoing are true and correct statements: True
I authorize and retain The Rosen Law Firm P.A. to file an action, or amend a current action, under the federal securities laws to recover damages and to seek relief against Medis Technologies Ltd. : True
The Rosen Law Firm will prosecute the action on a contingent fee basis and will advance all costs and expenses. The Complaint and Retention Agreement provided to me is incorporated by reference. True
Clicked to Participate in the Medis Technologies Ltd. Action.
-------------

## Retention Agreement

The Rosen Law Firm P.A., has thoroughly and extensively investigated this matter, and believes that there is a valid legal and factual basis to prosecute this action against the defendants listed in the complaint. If our continuing investigation uncovers additional wrongs by the named defendants or if we uncover actionable wrongdoing by additional persons or entities, we will amend the complaint to add them as defendants, and send the Client a copy of the amended complaint. The following is an outline of the terms under which The Rosen Law Firm, individually or in combination with other counsel, will represent you (the "Client") as a lead plaintiff.

**By executing this Retainer Agreement ("Agreement") and the attached Certification the Client agrees to serve as a lead plaintiff, pursuant to the terms and undertakings set forth in the attached Certification incorporated by reference herein, if so appointed.**

    1.  Pursuant to this retainer agreement, The Rosen Law Firm agrees to represent the Client and other class members in this litigation on a <u>fully contingent</u> basis with respect to its fees. In addition, The Rosen Law Firm and other plaintiffs' counsel will advance all costs and expenses that plaintiffs' counsel deem necessary to prosecute the case. If the lawsuit generates a fund for the class, plaintiffs' counsel will seek their fees, costs, and expenses by application to the Court.

    2.  On behalf of the class and as a class representative, the Client acknowledges that plaintiffs' counsel may apply for a fee of up to 33 1/3% of the recovery plus disbursements, subject to court

approval. "Disbursements" shall include but not be limited to costs of travel expenses, telephone, copying, fax transmission, depositions, investigators, messengers, mediation expenses, computer research fees, court fees, expert fees, other consultation fees and paralegal expenses. Any recovery in the litigation shall first be used to reimburse disbursements. In the event that the litigation is resolved by settlement under terms involving any "in-kind" payment, such as stock, the contingent fee agreement shall apply to such "in-kind" payment.

3. If there is no recovery for the class, there will be no obligation on the Client's part to pay any legal fees. If no recovery is obtained, the Client will owe nothing for costs and other expenses. In the event that an order is entered awarding costs and expenses in favor of defendants, The Rosen Law Firm will be responsible for such costs and expenses, not the Client. If the Court does not permit the case to proceed as a class action, we will mutually decide whether, and on what basis, the case will continue.

4. The Client understands that The Rosen Law Firm may seek Court approval to appoint the Client, in conjunction with possibly others who have made similar requests, as lead plaintiff(s) in the action which we propose to file on the Clients behalf, or in connection with subsequently filed actions arising out of the same facts.

5. The Rosen Law Firm is given the authority to opt the Client out of any class action proceeding relating to the claims authorized herein and/or pursue the Client claim individually in a group action, if the Client is not appointed Lead Plaintiff and The Rosen Law Firm is not appointed Class Counsel.

6. Any monies recovered from defendants on behalf of the class will be divided among class members pursuant to a court-ordered plan of allocation, which shall take into account, among other things, the proportion of total losses incurred by the Client and each other class member. Under the rules governing class action litigation, while the lead plaintiff(s) recover according to the same formula as other class members, the Court may approve, upon application therefore, reimbursement of the lead plaintiffs' reasonable costs and expenses directly related to the representation of the class. Examples are lost wages and travel expenses associated with testifying in the action.

7. Client agrees to cooperate in the prosecution of the suit including providing documents to substantiate the Client's claim, and to cooperate in providing discovery information, including a deposition if necessary.

8. Client may terminate this Agreement as to The Rosen Law Firm, with or without cause and without penalty, by providing written notice of termination. The Rosen Law Firm may terminate this agreement if the Client fails to cooperate in the prosecution of this action.

9. If the Rosen Law Firm is terminated for any reason, or the Client is terminated for lack of cooperation, The Rosen Law Firm shall be entitled (a) to be reimbursed, pursuant to paragraph 2 above, for reasonable out-of-pocket costs and expenses that they incurred, but only if and when recovery is obtained, and (b) to be paid such compensation as might be payable to them in accordance with this Agreement, but only if and to the extent and at the time compensation is payable to the Rosen Law Firm from any recovery in this litigation pursuant to paragraph 2 above.

10. The Client agrees that our files and papers compiled in connection with our investigation and prosecution of this matter constitute the work product and property of this firm over which the firm has complete control with respect to its use and/or disclosure.

11. Any actions arising out of this Agreement shall be governed by the laws of New Jersey, and

shall be brought and maintained in the Superior Court, Essex County, NJ which shall have exclusive jurisdiction thereof.

12. This Agreement, along with the signed Certification of Proposed Lead Plaintiff form, sets forth the entire Agreement between the parties, and supersedes all other oral or written provisions.