UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CHUN YU WONG, JOHN SELLARS, AND ROYCE OELSCHLAGER, individually and on Behalf of all others similarly situated, | x : : : |
| Plaintiffs, | : Case No. 07-CV-3230 (PAC) : |
| v. | : Hon. Paul A. Crotty : |
| MEDIS TECHNOLOGIES LTD., ROBERT K. LIFTON and ANDREW UDIS, | : : **ORAL ARGUMENT REQUESTED** : |
| Defendants. | x |

**DEFENDANTS' REPLY MEMORANDUM OF LAW IN FURTHER
SUPPORT OF DEFENDANTS' MOTION TO DISMISS PLAINTIFFS'
<u>FIRST AMENDED CLASS ACTION COMPLAINT</u>**

**TABLE OF CONTENTS**

|   |   | Page |
|---|---|---|
| PRELIMINARY STATEMENT | | 1 |
| ARGUMENT | | 3 |
| I. | THE AMENDED COMPLAINT FAILS TO PLEAD SCIENTER | 3 |
| | A. Plaintiffs Concede That They Have Not Alleged Scienter Based On Motive and Opportunity | 3 |
| | B. The Amended Complaint Fails To Plead Conscious Misbehavior or Recklessness | 4 |
| |    1. Plaintiffs Impose a "Strict Liability" Standard for Scienter Rather Than Weigh Competing Explanations for the Alleged Conduct | 4 |
| |    2. There Is No Meaningful Distinction Between a "Brand" and a "Logo" | 7 |
| | C. There Was No Duty to Disclose Beyond What Was Disclosed | 8 |
| | D. The *Inside Greentech* Article Is Not Probative of Scienter | 10 |
| II. | The "Historical" Pattern And Practice Allegations Should Not Be Considered | 10 |

# TABLE OF AUTHORITIES

## CASES

*In re BP Prudhoe Bay Royalty Trust Sec. Litig.*, 2007 WL 3171435 (W.D. Wash. Oct. 26, 2007) ...... 8

*In re Bayou Hedge Fund Litig.*, No. 06-CV-2943, 2007 WL 2319127 (S.D.N.Y. July 31, 2007) ...... 10

*In re Cardinal Health Inc. Sec. Litigs*, 426 F. Supp. 2d 688 (S.D. Ohio 2006) ...... 10

*Commodity Futures Trading Commission v. Murray Ira Rosenberg*, 85 F. Supp. 2d 424 (D.N.J. 2000) ...... 10

*Cosmas v. Hassett*, 886 F.2d 8 (2d Cir. 1989) ...... 4, 5

*In re eSpeed, Inc. Sec. Litig.*, 457 F. Supp. 2d 266 (S.D.N.Y. 2006) ...... 6

*Epstein v. Itron, Inc.*, 993 F. Supp. 1314 (E.D. Wash. 1998) ...... 6

*In re GeoPharma, Inc. Sec. Litig.*, 411 F. Supp. 2d 434 (S.D.N.Y. 2006) ...... 2, 8, 9, 10

*Helwig v. Vencor, Inc.*, 251 F.3d 540 (6th Cir. 2001) ...... 9

*Higginbotham v. Baxter Int'l Inc.*, 495 F.3d 753 (7th Cir. 2007) ...... 8

*In re JP Morgan Chase Sec. Litig.*, 363 F. Supp. 2d 595 (S.D.N.Y. 2005) ...... 6

*Kalnit v. Eichler*, 264 F.3d 131 (2d Cir. 2001) ...... 4

*In re Milestone Scientific Sec. Litig.*, 103 F. Supp. 2d 425 (D.N.J. 2000) ...... 6

*In re Read-Rite Corp. Sec. Litig.*, 335 F.3d 843 (9th Cir. 2003) ...... 6

*Roeder v. Alpha Indus., Inc.*, 914 F.2d 22 (1st Cir. 1987) ...... 9

*Rosenzweig v. Azurix Corp.*, 332 F.3d 854 (5th Cir. 2003) ...... 6

*S.E.C. v. Collins & Aikman Corp.*, 524 F. Supp. 2d 477 (S.D.N.Y. 2007) ...... 4

*Suez Equity Investors, L.P. v. Toronto-Dominion Bank*, 250 F.3d 87 (2d Cir. 2001) ...... 4

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. ___, 127 S. Ct. 2499 (2007) ...... *passim*

*In re Time Warner Inc. Sec. Litig.*, 9 F.3d 259 (2d Cir. 1993) ...... 9

*In re Top Tankers, Inc. Sec. Litig.*, 528 F. Supp. 2d 408 (S.D.N.Y. 2007) ...... 8

*United States v. Benton*, 852 F.2d 1456 (6th Cir. 1988)..................................................10

*United States v. Bice-Bey*, 701 F.2d 1086 (4th Cir. 1983)................................................10

*United States v. Weisman*, 736 F.2d 421 (7th Cir. 1984)..................................................10

## STATUTES

Fed. R. Civ. P. 12(b)(6)...............................................................................................1

Defendants Medis Technologies Ltd. ("Medis" or the "Company"), Robert K. Lifton ("Lifton") and Andrew Udis ("Udis") (collectively, "Defendants") respectfully submit this reply memorandum of law in further support of their Motion to Dismiss Plaintiffs' First Amended Class Action Complaint (the "FAC") pursuant to Fed. R. Civ. P. 12(b)(6) (the "Motion").

## PRELIMINARY STATEMENT

Plaintiffs are unable to show that they have pled facts sufficient for an inference of scienter. Thus, they tell the Court not to dismiss the case because Defendants only argue on the technical legal ground of scienter, never denying the allegations as untrue. However, Plaintiffs' view is belied by Defendants' moving brief, which clearly stated that the Company has always stood by the veracity of its April 13, 2007 Press Release (the "April 13 Press Release"), and thus denied the allegations as untrue. (Open. Br. at 7-8.) Further, the Company has always denied the accuracy of comments published by an unrelated third party, *Inside Greentech*. (*Id.* at 9, 22.) Plaintiffs attempt to conflate these two publications -- one of which (the April 13 Press Release) was sanctioned by the Company, and the other of which (the *Inside Greentech* article) was not -- in order to try to imply nefarious conduct. No reasonable reading of the only publication that matters -- the April 13 Press Release -- shows any material omissions or misstatements.

Plaintiffs allege that Defendants purposefully sought to temporarily increase the price of Medis' stock for a few days, but allege no reason whatsoever in their FAC. They later attempt to supply a reason for that scheme in their briefing, but their newly-created theory that such an increase would hurt the shortsellers is not only completely unsupported, they also have failed to plead it, and thus, it cannot save their infirm pleading.

Plaintiffs further imply that the scheme they allege does not have to make sense in order for their FAC to survive dismissal. Rather, they contend, all they need to show is that there were material omissions. However, that clearly is not the law. As Judge Scheindlin explained in a similar case: "It is entirely possible for a defendant to make an honest but negligent mistake in

1

judging how much detail needs to be included in public statements . . ., [but] [t]he purpose of section 10(b) and Rule 10b-5 is to punish **knowing** fraud or reckless behavior, not mistakes that arise from negligent or even grossly negligent behavior." *In re GeoPharma, Inc. Sec. Litig.*, 411 F. Supp. 2d 434, 436-37 (S.D.N.Y. 2006) (emphasis added).

*Tellabs* and the law of this Circuit require more of Plaintiffs' pleading than conclusory allegations that ignore intent. The FAC must allege "facts that give rise to the requisite 'strong inference' of scienter [and] a court must consider plausible nonculpable explanations for the defendant's conduct." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. ___, 127 S.Ct. 2499, 2510 (2007). Plaintiffs allege that the April 13 Press Release omitted material information regarding the number of Power Packs the Company had sold to Microsoft and that the Power Packs were not intended for resale. From these omissions, Plaintiffs frame a conclusion that the April 13 Press Release conveyed a hidden message that the Company had sold vast amounts of its Power Packs to Microsoft for resale. Plaintiffs completely ignore the explicit and intended message of the April 13 Press Release -- that the Company had achieved an historic milestone for itself and the industry in making its first sale of a Power Pack. Plaintiffs further now contend that the Company misstated that the Power Packs bore Microsoft's "brand" rather than its "logo." While discovery will show that the Power Packs did in fact contain the brand name "Microsoft," the FAC fails to plead this distinction at all, and in any event, Plaintiffs cannot explain how they have been damaged by the use of one term rather than another, particularly when "brand" and "logo" are considered synonymous by Roget's Thesaurus.[1]

Unable to meet the *Tellabs* standard, Plaintiffs fashion their own novel standard for imputing fraudulent intent to the Company under what is tantamount to a "strict liability" standard. According to Plaintiffs, any affirmative misstatement concerning the "core business"

---

[1]   *See* "brand," ROGET'S 21ST CENTURY THESAURUS 100 (Barbara Ann Kipfer, ed., 1992) (listing logo and logotype as synonyms for brand).

of a company is sufficient to impute scienter. Not only is this irrelevant to this alleged omissions case, it is not the law. Plaintiffs can only arrive at their erroneous position by ignoring *Tellabs* and relying on outdated law that pre-dates the Private Securities Litigation Reform Act (the "PSLRA").

Furthermore, with respect to any significance of the *Inside Greentech* article, Plaintiffs first tried to hide the author's addendum from the Court by failing to cite it in the FAC.[2] They now tell the Court to ignore the competing nonculpable inference that Mr. Udis was misquoted, as can be inferred from the addendum, especially when coupled with the Company's April 25, 2007 Press Release, which explicitly stated that the Company attempted to stop the article's publication. (Open Br. at 22.) Under *Tellabs*, the Court cannot infer scienter from a third party's publication of an article where the Defendants tried to prevent its publication on the very ground that it was not accurate, especially when the purported fraudulent scheme makes no sense at all.

Defendant respectfully requests that the FAC be dismissed.

## ARGUMENT

I. **THE AMENDED COMPLAINT FAILS TO PLEAD SCIENTER**

   A. **Plaintiffs Concede That They Have Not Alleged Scienter Based On Motive and Opportunity**

Plaintiffs concede that the FAC does not seek to establish scienter through motive and opportunity. (Opp. Br. at p. 16 n.8 ("Plaintiffs are not pursuing their theory of scienter on motive and opportunity.").) Plaintiffs further concede that they must demonstrate a strong inference of scienter through conscious misbehavior or recklessness, which is a more difficult standard to

---

[2] Plaintiffs submitted a January 29, 2008 letter to the Court which contended that many of Defendants' exhibits should be stricken. Defendants responded on January 31, 2008 (the "January 31 Letter"), arguing, among other things, that the FAC alleges that it is pled based on available public documents as of September 10, 2007. (FAC at 1-2.) Plaintiffs cherry-picked that public record and then took issue with Defendants' effort to provide the Court with the full public record relevant to this Motion. Defendants fully incorporate their January 31 Letter into this Reply Brief by reference.

meet, requiring that the corresponding circumstantial evidence be greater. *Kalnit v. Eichler*, 264 F.3d 131, 142 (2d Cir. 2001).

Plaintiffs and Defendants also agree that the conscious misbehavior/recklessness standard can only be satisfied by "'conduct which is highly unreasonable and which represents an *extreme departure* from the standards of ordinary care to the extent that the danger was either known to the defendant or so obvious that the defendant must have been aware of it.'" *Id.* (emphasis added). That conduct has not been alleged here.

### B. The Amended Complaint Fails To Plead Conscious Misbehavior or Recklessness

#### 1. *Plaintiffs Impose a "Strict Liability" Standard for Scienter Rather Than Weigh Competing Explanations for the Alleged Conduct*

The FAC contains only conclusory allegations of scienter based on Lifton's and Udis' positions within the Company. (*See, e.g.*, FAC, ¶¶ 74-75 (alleging that the Individual Defendants were high-level executives and had access to internal reports and other data and information about the Company's finances, operations and sales).) As set forth in Defendants' moving brief, the law is well-established that such conclusory allegations are insufficient to prove scienter.[3] (Open. Br. at 16-18.)

Unable to show how the circumstantial evidence establishes conscious misbehavior or recklessness, Plaintiffs resort to creating their own strict liability standard for scienter. They rely heavily on a nearly 20 year old case captioned *Cosmas v. Hassett*, 886 F.2d 8 (2d Cir. 1989) -- a

---

[3]    Plaintiffs state that "an express allegation of deliberate misconduct is sufficient to plead scienter," (Opp. Br. at 14 (*citing S.E.C. v. Collins & Aikman Corp.*, 524 F. Supp. 2d 477, 487 (S.D.N.Y. 2007).) However, the *Collins* court stressed that the totality of the facts needed to be considered. Looking at the complaint as a whole, the *Collins* court found scienter was present when the complaint alleged detailed facts concerning misrepresentations in specific financial reports and an overstatement of the company's financials. 524 F. Supp. 2d at 487, 492-95. These facts are entirely different from the omissions case alleged here. Likewise, scienter was found in *Suez Equity Investors, L.P. v. Toronto-Dominion Bank*, 250 F.3d 87, 100 (2d Cir. 2001), cited by Plaintiffs, because the complaint pointed to specific fraudulent statements and omissions that had to be knowing because they differed from previous versions of the same report. Nothing of the sort is alleged here.

pre-PSLRA and pre-*Tellabs* decision which involved only affirmative misrepresentations and not omissions as in the case at bar -- to suggest that scienter should be inferred because "knowledge of contradictory information . . . is imputed to a corporation's executive officers and key employees when the information would involve a significant part of the corporation['s] business." (Opp. Br. at 16.) This is not the law in this Circuit, and cannot be reconciled with the later *Tellabs* decision, which Plaintiffs acknowledge must control the Court's analysis.

In *Cosmas*, the directors of Inflight Services, Inc., a publicly traded company, made affirmative misrepresentations about revenue from the People's Republic of China (the "PRC") which stated that business with the PRC was thriving, when in fact, just the opposite was true because of import restrictions imposed by the PRC. *Id.* at 10. Nearly one year after the PRC had passed the import restrictions, Inflight announced "a 'write down' of $2.5 million worth of inventory…[because of] the cancellation of anticipated sales to customers in the PRC due to the PRC's import restrictions." *Id.* at 10-11. The company's 10K revealed long-standing misconduct and deception by admitting that the "backlog of $6 million worth of purchase orders …[was composed of] $5 million . . . for export sales to the [PRC]. Those sales were not made due to import restrictions imposed by that country." *Id.* at 11. On these egregious facts, the *Cosmas* court concluded that "the amended complaint alleges sufficient facts from which it be inferred that the defendants had the requisite fraudulent intent" because the "sales to the PRC were to represent a significant part of Inflight's business." *Id.* at 13.[4]

The *Cosmas* decision has been widely criticized. In *In re eSpeed, Inc. Sec. Litig.*, 457 F.Supp.2d 266 (S.D.N.Y. 2006) -- a case cited by the Plaintiffs -- the court questioned the continued validity of *Cosmas*, stating "*Cosmas* precedes the PSLRA by six years, and post-

---

[4] Unlike the case at bar, which Plaintiffs concede is not based on motive or opportunity, the *Cosmas* court found motive.

PSLRA decisions in other Circuits have cast doubt on whether scienter can be pleaded in this manner." *Id.* at 294 n. 209 (*citing Rosenzweig v. Azurix Corp.* 332 F.3d 854, 867 (5th Cir. 2003) (rejecting allegation that failure of company's core business evidences defendant's knowledge that they were misrepresenting company's prospects for success); *In re Read-Rite Corp. Sec. Litig.*, 335 F.3d 843, 848 (9th Cir. 2003) (rejecting "core operations" method of pleading scienter in light of PSLRA)). In fact, **none** of the cases cited by Plaintiff have found scienter under *Cosmas* in the Second Circuit. *See e.g., In re eSpeed, Inc.*, 457 F. Supp. 2d at 294 (declining to apply the "core business" theory); *In re JP Morgan Chase Sec. Litig.*, 363 F. Supp. 2d 595, 628 (S.D.N.Y. 2005) (same).[5]

*In re Milestone Scientific Sec. Litig.*, 103 F. Supp. 2d 425 (D. N.J. 2000) is instructive as to why this case should be dismissed. In that case, plaintiffs argued that the defendants were "at least reckless" in not disclosing the accounting method employed by the defendant because it involved the company's primary product. *Id.* at 473 n.40. The *In re Milestone* court rejected this argument because "[p]laintiffs conceded that the [product] performed its intended function as a delivery system for anesthesia…[and the complaint] does not contain any facts supporting an inference that the Defendants knew or were reckless in not knowing that the [product] was incapable of meeting requirements that were central" to the continued survival of the Defendant as a business entity. *Id.* Likewise, here, the FAC contains no specific facts supporting the inference that Defendants acted either recklessly or contrary to their actual knowledge on April 13, 2007. Moreover, the FAC does not allege that the Defendants were aware of some glaring defect in the Power Packs that made them unusable. Indeed, on May 8, 2007, MyTreo

---

[5] The core business theory was applied in *Epstein v. Itron, Inc.*, 993 F.Supp. 1314, 1325-26 (E.D. Wash. 1998), which predates *Tellabs* and is not binding on this Court.

- 6 -

announced that it would offer the Power Packs to consumers on its website, and in fact did sell them to its customers. (Open. Br. at 5.)

Ultimately, *Cosmas'* strict liability standard cannot be reconciled with the *Tellabs* standard. In *Tellabs* the Supreme Court clarified that on a motion to dismiss "the court must take into account plausible opposing inferences . . . [because] Congress did not merely require plaintiffs . . . to allege facts from which an inference of scienter rationally *could* be drawn." *Id.* at 2509-10. Accordingly, a plaintiff's theory of scienter "must be more than merely 'reasonable' or 'permissible'-- it must be cogent and compelling, thus strong in light of other explanations." *Id.* at 2510. Here, Plaintiffs' theory of a "hidden message" of massive sales worldwide is not "cogent and compelling," nor is it even plausible. Indeed, commentator Herb Greenberg is even quoted in the FAC as remarking that the April 13th Press Release contained "no other details about the size of the sale, potential contribution to profits **or even what Microsoft might use this fuel-cell product for**." (FAC, ¶ 37 (emphasis added).) Clearly, Mr. Greenberg did not interpret the April 13th Press Release as stating that the Microsoft branded Power Packs were to be sold commercially to consumers in massive quantities.

    **2.**  ***There Is No Meaningful Distinction Between a "Brand" and a "Logo"***

Plaintiffs want the Court to infer that by stating that the product bore the Microsoft band, the Defendants were conveying a message of massive commercial resale, and build their case on that false construction. However, to the extent Plaintiffs now pin their hopes on the distinction between a Microsoft "logo" or a Microsoft "brand," those terms are synonymous. *See* ROGET'S 21ST CENTURY THESAURUS 100 (Barbara Ann Kipfer, ed., 1992). Nor is the distinction factually relevant, as the important point made by the April 13 Press Release was the commercial sale of a

viable fuel cell to Microsoft, which bore Microsoft's name.[6] Nowhere do Plaintiffs explain how there were damaged by the use of the term "brand" versus "logo." And nowhere did Defendants state in the April 13 Press Release that the Power Packs were to be sold on a massive scale.

Additionally, Plaintiffs' distinction of "brand" versus "logo" was never pled in the FAC because Plaintiffs cherry-picked the public record and ignored public information stating that the Power Packs bore Microsoft identification. They should not benefit from their decision to ignore contradictory facts in their pleading.

Finally, Plaintiffs' source for its allegation that the units were not branded was anonymous, which means it should be discounted. *See Higginbotham v. Baxter Int'l Inc.*, 495 F.3d 753, 756-57 (7th Cir. 2007) (Open Br. at 18). Plaintiffs attempt to distinguish *Higginbotham* by arguing that eventually the identities of the unnamed sources will be revealed (Opp. Br. at 13), but that distinction is meaningless on a motion to dismiss, which is based on the pleading. They further state that their unnamed sources are better than those in *Higginbotham* because here the sources are not self-interested. However, again, that remains to be seen if this case proceeds to discovery, and cannot be considered on a motion to dismiss.

### C. There Was No Duty to Disclose Beyond What Was Disclosed

Defendants argued in their moving papers that the instant case is akin to *GeoPharma*, which was dismissed for failing to plead scienter because the alleged scheme made no sense. (Open. Br. at 14, 20); 411 F. Supp. 2d at 443-46. *GeoPharma* clearly stands for the proposition that fraudulent intent cannot be imputed to a company every time a public statement lacks detail.

---

[6] The cases cited by Plaintiffs finding scienter in the absence of motive and opportunity are distinguishable because the complaints therein alleged much more specific detail than the conclusory allegations contained in the FAC. *In re Top Tankers, Inc. Sec. Litig.*, 528 F. Supp. 2d 408, 415-16 (S.D.N.Y. 2007) (complaint which detailed that defendants were aware of improper accounting methods based on interactions with accountant sufficiently pleaded scienter); *In re BP Prudhoe Bay Royalty Trust Sec. Litig.*, 2007 WL 3171435, *3 (W.D. Wash. Oct. 26, 2007) (finding scienter was pled with respect to alleged representations that the oil pipeline was safe when the complaint contained a "litany of alleged facts" tending to show that pipelines were in poor condition and not maintained properly).

*Id.* Plaintiffs attempt to distinguish *GeoPharma* by claiming that "*Geopharma* involved no affirmative misstatements." (Opp. Br. at 19.) However, plaintiffs in *GeoPharma* did exactly what Plaintiffs here are trying to do, recasting their misrepresentation case as an omission case. As the court stated in rejecting that approach, plaintiffs inaccurately "described the prescription product statement as an affirmative misstatement, and argued the recklessness issue through that lens." *Geopharma*, 411 F.Supp.2d at 446. Moreover, Plaintiffs contend that *GeoPharma* did not involve an obvious duty to disclose whereas this case does. However, *GeoPharma* clearly concerns the same issue as here -- whether the lack of detail in a disclosure automatically means that defendants acted fraudulently. *Id.* The *GeoPharma* court held that it does not, as should the Court here.[7] *Id.*

Indeed, Plaintiffs' cases regarding the duty to disclose details are inapposite because they concern whether there was a duty to correct *prior* statements that subsequently became false. (Opp. Br. at 11.) *See In re Time Warner Inc. Sec. Litig.*, 9 F.3d 259, 268 (2d Cir. 1993) (obligation to disclose subsequent information); *Helwig v. Vencor, Inc.*, 251 F.3d 540, 561 (6th Cir. 2001) ("[T]he question is whether the company had a duty to *complete* the information *already given* concerning the Budget Act and earnings estimates.") (emphasis added). Further, the court in *Roeder v. Alpha Indus., Inc.*, 914 F.2d 22, 26-27 (1st Cir. 1987), cited by Plaintiffs, dismissed the case because there was no duty to disclose.

---

[7] Plaintiffs also compare later acts taken by GeoPharma and Medis, arguing that GeoPharma's conduct was better than Medis' in correcting any misstatement -- but at the same time, Plaintiffs contend that the Court should not even consider Medis' April 25, 2007 Press Release which disavows the *Inside Greentech* article. In any event, after-the-fact conduct was not a major factor in the *GeoPharma* court's analysis. Moreover, neither was whether the public had a way to verify the information at issue, as Plaintiffs now claim distinguishes *GeoPharma*.

### D.  The *Inside Greentech* Article Is Not Probative of Scienter

Plaintiffs consistently conflate the April 13 Press Release which the Company stood by, and the *Inside Greentech* article which it disavowed. (*See* Opp. Br. at 10, 18, 22.) Plaintiffs contend that the *Inside Greentech* article is probative of scienter. However, that attempt ignores the addendum to that article which, especially in conjunction with the April 25 Press Release, demonstrates that the Company tried to prevent the inaccurate *Inside Greentech* article from ever being published.[8] (Open Br. at 22.) This alone negates any suggestion that the statements purportedly attributable to Udis were made with a fraudulent intent that would support scienter.

### II.  The "Historical" Pattern And Practice Allegations Should Not Be Considered

As set forth in Defendants' moving brief, Plaintiffs are misleading the Court by presenting false allegations of "historical pattern and practice" events which Defendants have already shown to be false. (Open. Br. at 10-11; *see* January 31 Letter.) In any event, Defendants cited to numerous cases rejecting pattern and practice evidence of scienter in securities fraud actions, which Plaintiffs do not and cannot distinguish. *See Bayou Hedge Fund*, 2007 WL 2319127 at *9; *GeoPharma*, 411 F. Supp. 2d at 450-51; *In re Cardinal Health Inc. Sec. Litigs*, 426 F. Supp. 2d 688, 778-79 (S.D. Ohio 2006) (Open. Br. at 24). Plaintiffs do not point to any case which stands for the proposition that allegations of unrelated past conduct -- here, allegations which are demonstrably false -- are probative of scienter in a securities fraud case.[9]

---

[8]  The addendum states that when Medis saw the article, it "called *Inside Greentech* to suggest the Microsoft order was substantially smaller in size . . ." (Renner Aff., Ex. C.) The April 25 Press Release states that "a third party article .. cited in the plaintiff's complaint was materially inaccurate and that Medis had so informed its author prior to the article's publication and told him not to publish the article." (*Id.*, Ex. D.)

[9]  Plaintiffs cite three criminal cases and a Commodities Exchange Act enforcement action, all involving evidentiary matters, in trying to impugn Defendants' character from purportedly prior bad acts. *United States v. Benton*, 852 F.2d 1456, 1468 (6th Cir. 1988); *United States v. Weisman*, 736 F.2d 421, 427 (7th Cir. 1984); *United States v. Bice-Bey*, 701 F.2d 1086, 1089 (4th Cir. 1983); *Commodity Futures Trading Commission v. Murray Ira Rosenberg*, 85 F.Supp.2d 424, 437-38 (D.N.J. 2000). These cases are not binding on this Court and are not relevant to the scienter standard under the PSLRA.

## CONCLUSION

For the foregoing reasons and the reasons set forth in Defendants' opening papers, Defendants respectfully request that this Court dismiss the FAC in its entirety.

Dated: April 24, 2008
      New York, New York

SONNENSCHEIN NATH & ROSENTHAL LLP

By:     /s/ Deborah H. Renner
      Reid L. Ashinoff (RA 0281)
      Deborah H. Renner (DR 4225)
      Benito Delfin, Jr. (BD 1216)
      Abigail Lauer (AL 8968)
1221 Avenue of the Americas
New York, New York 10020
(212) 768-6700

*Attorneys for Defendants*
*Medis Technologies Ltd., Robert K. Lifton,*
*and Andrew Udis*

17593629

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CHUN YU WONG, JOHN SELLARS, AND ROYCE OELSCHLAGER INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED,<br><br>       Plaintiffs,<br>v.<br><br>MEDIS TECHNOLOGIES LTD., ROBERT K. LIFTON, and ANDREW UDIS,<br><br>       Defendants. | Case No.: 07-CV-3230 (PAC)<br><br>**CERTIFICATE OF SERVICE** |

## CERTIFICATE OF SERVICE

I hereby certify that on April 24, 2008, a copy of the foregoing Reply Memorandum of Law in Further Support of Defendants' Motion to Dismiss Plaintiffs' First Amended Class Action Complaint was caused to be served upon the Court and the following by ECF, and that an additional copy of the Motion to Dismiss was served upon Mr. Kim by e-mail:

>       Phillip Kim, Esq.
>       Laurence Rosen, Esq.
>       THE ROSEN LAW FIRM, P.A.
>       350 Fifth Avenue, Suite 5508
>       New York, NY 10118
>       pkim@rosenlegal.com

Dated: April 24, 2008

>                 Respectfully submitted,
>
>                 /s/ Abigail Lauer
>                 Abigail Lauer (AL 8968)
>                 SONNENSCHEIN NATH & ROSENTHAL LLP
>                 1221 Avenue of the Americas
>                 New York, NY 10020
>                 Phone: (212) 768-6700
>                 Fax: (212) 768-6800

*Attorneys for Medis Technologies Ltd., Robert K. Lifton, and Andrew Udis*